[Civ. No. 1305. Fourth Appellate District.—May 12, 1934.]

VESTA HELEN HUGHES et al., Respondents, v. F. R. MACIEL et al., Defendants; F. R. MACIEL, Jr., Appellant.

Thomas F. Lopez for Appellant.

Sherwood Green for Respondents.

BARNARD, P. J.—In 1923, F. R. Maciel mortgaged certain property to the plaintiffs to secure notes to the amount of $15,000 which were payable in 1932. The mortgage covered 240 acres of land in Kings County and also "5/32 of one share of the capital stock of the Peoples Ditch Company". It is conceded that this fractional share of stock in this mutual water company was not appurtenant to the mortgaged real property or to any real property, but that the water represented by the stock could be used by its owner anywhere within the district. A default having been made in certain payments required by the note and mortgage, foreclosure proceedings were commenced on December 16, 1930, and both the mortgaged real property and the fractional share of stock referred to were, by a commissioner, sold to the plaintiffs on May 29, 1931. In the meantime, on December 2, 1930, an assessment on this fractional share of stock fell due. The same was not paid and by proceedings which were conceded to have been regular, this stock was sold at public auction by the Peoples Ditch Company on February 3, 1931, to F. R. Maciel, Jr., a son of the mortgagor, for the sum of $15.75, being the amount of an assessment of $15 plus a five per cent penalty. The undisputed evidence is that this fractional share of stock was at that time worth $1500. The year of redemption having ex-

pired on May 29, 1932, plaintiffs brought this action on July 18, 1932, to recover possession of the stock or the value thereof if delivery could not be had.

The theory of this action is that the mortgagor and his son connived together to permit the assessment to go delinquent to the end that the stock should be purchased by the son, and the complaint alleges that the father, for the purpose of defrauding the plaintiffs, refused to pay the assessment, caused the stock to be advertised for sale by the ditch company, and caused the son to purchase the same, by reason of which the stock was sold by the ditch company and a new certificate issued to the son in lieu of the certificate formerly held by the father. The trial court found in all respects in favor of the plaintiffs and entered judgment providing for the delivery of the stock to them upon the repayment to the son of all amounts paid by him as assessments upon the stock, or for the sum of $1500 in the event delivery of the stock could not be had. From this judgment the defendant F. R. Maciel, Jr., alone has appealed.

It is first contended that the complaint fails to state a cause of action against the appellant in that it is not expressly charged therein that the son participated in the fraud alleged to have been practiced by his father. The complaint alleges that the father, for the purpose of defrauding the respondents, permitted the stock to be sold and caused the appellant to purchase the same at the sale. We think it sufficiently appears that the appellant was charged with participation in the fraud alleged, the entire case was tried upon that theory, and the complaint must be held to have been sufficient under the circumstances shown by the record.

The appellant's main contention is that the evidence is entirely insufficient to sustain the findings of fraud on the part of himself and of his father. It is pointed out that the appellant testified that he had never discussed the matter of the purchase of this stock with his father, that he did not know that the stock he was purchasing had been formerly owned by his father or that this was the same stock which his father had previously mortgaged to the respondents, and that there is no direct evidence to the contrary.

It is hardly to be expected that direct evidence would be available to the effect that this father and son discussed this matter and agreed upon the steps of a fraudulent transac-

tion, and it is a rare case where parties charged with fraud openly admit the same in their testimony. From the very nature of things, in such a case, proof of fraud must usually rest upon surrounding circumstances and indirect rather than direct evidence. This principle is well recognized in our law and needs no citation of authorities. In setting aside fraudulent conveyances it is well settled that while no legal presumption of fraud arises from the relationship of parent and child, this fact, when coupled with other suspicious circumstances, may be sufficient to raise an inference of fraud. (12 Cal. Jur. 974, and cases there cited.) Such a relationship between the parties may well serve to strengthen the presumption that may arise from other circumstances and frequently is of great importance in determining the truth as to what has happened. (12 Cal. Jur. 1070.) While the stock here in question was not conveyed directly from the father to the son, in effect it was such a transfer and a similar rule may properly be here applied.

Examining the evidence with these principles in mind, we think it is sufficient to sustain the findings attacked. The appellant was twenty-six years of age at the time of the trial and was then residing and had always resided with his father and mother on their home place, which was not the mortgaged real property herein referred to. The home place had been deeded by the father to the mother some years before this action arose. About the time of the transaction involved in this case, the exact time not appearing, the father, who owned a large herd of dairy cattle, conveyed the same to his son, the appellant, and thereafter went through bankruptcy. For some two or three years before the trial the appellant, while living with his father, had managed and conducted the business theretofore conducted by his father. The water secured by means of the stock here in question had formerly been used for the purpose of irrigating the real property mortgaged to the respondents. This fractional share of water stock was the only stock the father had ever owned in the Peoples Ditch Company. The appellant testified that he needed some more water for the dairy which he owned and also for some land he had leased, and that he purchased this water stock in order to get such additional water. He also testified that he had never talked with his father about this stock, that he

learned that such a fractional share of stock was to be sold by the ditch company through seeing a notice published in a Hanford paper to the effect that 5/32 of one share of stock in the Peoples Ditch Company would be sold on a certain date, that he attended the sale and bought the stock without his father knowing anything about it, that he did not remember of anything being said at the time of the sale to the effect that the stock being sold was the stock owned by his father, that he did not learn until two months later that the stock had formerly belonged to his father, and that he had been using the water since on the home place and on the land he had leased. The notice of sale which was published by the ditch company was introduced in evidence and was to the effect that a certain assessment had been levied upon the shares of the corporation, payable on or before a certain date to the secretary at a given address, and that any share upon which the assessment remained unpaid would be sold at a certain time and place. The notice does not mention 5/32 of one share of stock in the corporation or any other specific amount of stock therein. This evidence contradicts the appellant's statement that he learned that this precise amount of stock was to be sold on that date by reading this notice and, under a familiar rule, the court was justified in disbelieving all of the appellant's testimony. The secretary of the Peoples Ditch Company testified that the only stock in the corporation sold on the date in question was the 5/32 of one share formerly owned by the appellant's father, that at the time of the sale, while the appellant was present, he announced that the stock to be sold was that standing on the books of the corporation in the name of F. R. Maciel, that it was for 5/32 of one share, and that he then stated the number of the certificate, the amount of the assessment due and the penalty.

We think this evidence, with the inferences reasonably to be drawn therefrom, justified the court in concluding that this father and son, who were living together and who had transferred other property and business formerly owned and conducted by the father to the son, had, in effect, done the same thing with this water stock, that this was fraudulently done in an attempt to release the stock from the lien of the mortgage, and that the evidence sustains the findings made.

Some claim is made that the respondents are estopped and barred by laches from asserting their claim to this stock because their claim was not actively asserted until more than a year after the mortgaged property was sold at a commissioner's sale. The mortgagor had a right to redeem the property sold at any time within one year after the date of the sale. This action was begun about a month and a half after the year of redemption expired and it cannot be held that this was an unreasonable delay. It further appears that the court provided for the repayment to the appellant of any amounts expended by him in the meantime for assessments upon the stock and no material prejudice appears to have been suffered by the appellant by the short delay after the rights of the respondents became fixed and final.

The judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.